ORIENTE COMMERCIAL, INC., and Black & Decker, Inc., Appellants,

v.

The AMERICAN FLAG VESSEL, the M/V FLORIDIAN, her engines, tackle, appurtenances, in rem, and United States of America, Appellees.

No. 74–1966.

United States Court of Appeals, Fourth Circuit.

Argued March 3, 1975.

Decided Nov. 10, 1975.

Carter B. S. Furr, Norfolk, Va. (Jett, Berkley, Furr & Heilig, Norfolk, Va., Smathers & Thompson, Jacksonville, Fla., and McHugh, Heckman, Smith & Leonard, New York City, on brief), for appellants.

John M. Rogers, Atty., U. S. Dept. of Justice (Carla A. Hills, Asst. Atty. Gen., Brian P. Gettings, U. S. Atty., and William Kanter, Atty., U. S. Dept. of Justice, on brief), for appellees.

Before HAYNSWORTH, Chief Judge, BUTZNER, Circuit Judge, and HALL, District Judge.

HAYNSWORTH, Chief Judge:

The question presented by this case in admiralty is whether claims against a ship as a common carrier for damage to or loss of cargo are "preferred maritime liens" "for damages arising out of tort," 46 U.S.C. § 953(a), and thus superior to a valid preferred mortgage lien. 46 U.S.C. § 953(b), we hold that they are.

Oriente Commercial, Inc., Black and Decker, Inc., and the United States were among many *in rem* claimants against the M/V Floridian, which was arrested and sold by order of the court in May 1973. The United States held two valid preferred ship mortgages on the vessel. Oriente took a default judgment on its

claim that a shipment of meat was negligently damaged in transit. Black and Decker holds a default judgment on its claim that the vessel negligently failed to deliver part of a shipment of machinery. The several claims far exceed the proceeds of the sale, so the question of priority of the liens must be met.

Title 46 U.S.C.A. § 953 provides that the preferred mortgage lien shall have priority over all claims against a vessel sold by judicial order except preferred maritime liens and expenses, fees, and costs allowed by the court. Subsection 953(a)(2) defines "preferred maritime liens" to include "a lien for damages arising out of tort . . . ." The district court acknowledged that the asserted liens were maritime and that the cargo claimants had alleged loss and damage due to negligence in operation of the ship as a common carrier, but held that the claims did not give rise to preferred maritime liens. It was reasoned that such claims ought to be brought in contract, but, because of the broad duties of the vessel as a common carrier, almost always may be brought as tort actions. Since such claims are thus "hybrids" and since the Ship Mortgage Act was intended to promote ship financing, the court believed that cargo claims must be subordinate to preferred mortgages. This conclusion was bolstered by the court's observation that if the cargo liens were superior to the preferred mortgage lien, they would also outrank supply and repair liens, which are most in need of priority.

While the district court was led to its conclusion by policy considerations, we believe it gave insufficient weight to earlier cases that strongly support a contrary result. Thus, in *The John G. Stevens*, 170 U.S. 113, 18 S.Ct. 544, 42 L.Ed. 969 (1898), the Supreme Court held that a lien for damage to a tow due to negligence of its tug sounded in tort, independent of any contract made for towage, and was superior to liens for supplies, which sound solely in contract. *See also, Stevens v. The White City*, 285 U.S. 195, 201, 52 S.Ct. 347, 76 L.Ed. 699 (1932).

The opinion does much to dispel the notion that simply because a lien is a "hybrid" of tort and contract, it does not arise out of tort. The supply lienor had argued that the tug's liability was analogous to that of a common carrier for the loss of goods carried and, being thus contractual in origin, had no priority over the supply lien. In dictum decisive of the instant case, the Court rejected the contention:

> But even an action by a passenger, or by an owner of goods, against a carrier, for neglect to carry and deliver in safety, is an action for the breach of a duty imposed by the law, independently of contract or of consideration, and is therefore founded in tort.

170 U.S. at 124–25, 18 S.Ct. at 549.

The question was more precisely presented to Judge Soper, then a district judge, in *The Henry W. Breyer*, D.C., Md., 17 F.2d 423 (1927). Among the several creditors in that case were cargo shippers who claimed loss of goods and damages for prepaid freight against the ship as a common carrier. Judge Soper held that the shippers' liens arose in tort and thus had priority over the preferred mortgage lien, stating:

> The intervening libels of the shippers sound in tort, on the theory that they are entitled to recover damages for breach of the carrier's common-law duty, notwithstanding that the carrier's default was also a breach of the contract expressed in the bill of lading. The responsibilities of a common carrier may be restricted by contract, but the nature of its occupation makes it a common carrier still. . . . It is well established that ordinarily the owner of goods damaged by the dereliction of a common carrier has the option to bring action either in contract or tort. "Where, from a given state of facts, the law raises a legal obligation to do a particular act, and there is a breach of that obligation, and a consequential damage, there, although assumpsit may be maintainable upon a promise implied by law to do the act, still an action on the case

founded in tort is the more proper form of action." . . . In other words, when the relationship of shipper and carrier is established, there is a duty imposed by law which arises out of the relations which the carrier sustains to the public, and no special contract is necessary.

17 F.2d at 429 (citations omitted).

More recently it has been held that cargo claims such as those in the present case arise out of tort if the loss results from a lack of due diligence on the part of the carrier. Thus, in *Morrisey v. S. S. A. & J. Faith*, D.C., N.D.Ohio, 252 F.Supp. 54 (1965), the court concluded that the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300–1315, places a legal obligation, independent of contract, upon the carrier. While the court believed the duty of due diligence to be less burdensome to the carrier than that imposed in the *Breyer* case, either standard is met by the facts of this case. The cargo claimants having taken judgment on their allegations of negligence, have established a violation of the duty of due diligence and, *a fortiori*, of the much stricter obligations of common carriers. Accordingly, whichever standard is applied, it has been broken in this case, and the breach sounds in tort. *See also Port Welcome Cruises, Inc. v. S. S. Bay Belle*, D.C., Md., 215 F.Supp. 72, 86 (1963), *aff'd*, 324 F.2d 954 (4th Cir. 1963) (failure to return rented property sounds in tort on conversion theory); *Potash Co. v. M/V Raleigh*, D.C., C.Z., 361 F.Supp. 120 (1973); *The Pacific Spruce*, D.C., W.D. Wash., 1 F.Supp. 593 (1932).

*The St. Paul*, D.C., S.D., N.Y., 277 F. 99 (1921), relied upon by the district court, is not necessarily to the contrary.

In that case all but two of the cargo claims complaints sounded solely in contract. The two were apparently claims for loss of cargo sustained during a fire which occurred while the vessel was in the custody of the court, as a result of which no lien arose. *Id.* at 109. So viewed, the case stands for the proposition that a cargo claimant who brings his action solely in contract or who is unable to prove his tort will be subordinate to supply and repair liens. Oriente and Black and Decker are not such plaintiffs, having brought their actions in tort and taken judgments that are not contested by the United States.

Finally we note that the legislation draws no distinction between cargo claims that sound in tort, the so-called hybrid liens, and any other type of claim for damages arising out of tort. While Congress might have been well advised to subordinate cargo claims,[1] it flatly granted priority to all claims arising out of tort. The result reached by the district court and pressed by the United States would carve out an exception to the statute, unwarranted by its language. Whatever Congress meant, it stated that all tort liens are prior to preferred mortgage liens. In light of cases decided both before and after enactment of the Ship Mortgage Act, holding that cargo claims such as those in the instant case sound in tort, we cannot say that Congress intended something else. Accordingly, we hold that the claims arose out of tort and are preferred maritime liens having priority over the preferred mortgage lien.

*Reversed.*

1. The district court thought supply and repair lienors to be the least secure of all and more deserving of priority. In order to assure their superiority to cargo, it subordinated cargo to the ship mortgage. It appears, however, that cargo claims, in any event, may be superior to supply and repair claims. *See Potash Co. v. M/V Raleigh*, 361 F.Supp. 120, D.C., C.Z. (1973); 1 Benedict, Admiralty § 11 at 19 (6th ed.). *But see, The St. Paul*, 277 F. 99, D.C., S.D., N.Y., (1921).