[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

No. 98-5729

_____

D.C. Docket No. 97-01720-CV-KMM

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
06/21/00
THOMAS K. KAHN
CLERK

POLO RALPH LAUREN, L.P.,
POLO RALPH LAUREN CORP.,
f.d.b.a. General Accident Insurance Co.
of America,

Plaintiffs-Appellants,

versus

TROPICAL SHIPPING & CONSTRUCTION
CO., LTD.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 21, 2000)

Before COX and DUBINA, Circuit Judges, and KRAVITCH, Senior Circuit
   Judge.

KRAVITCH, Senior Circuit Judge:

This appeal centers on what recourse, if any, an owner of goods lost at sea has against the carrier when the owner of the goods is not a named party to the bill of lading. We also address the novel issue of what cause of action is afforded under the Carriage of Goods by Sea Act, 46 U.S.C. § 1300-1315 (1999) ("COGSA").

## I. BACKGROUND AND PROCEDURAL HISTORY

Appellants Polo Ralph Lauren, L.P. ("Polo") and its subrogated insurer, General Accident Insurance Company ("General Accident"),[1] seek damages for cargo lost overboard while in transport with Appellee Tropical Shipping & Construction Company ("Tropical"). Polo apparently entered into a bailment contract[2] with Drusco, Inc. ("Drusco") for the manufacture and delivery of 4643 pairs of mens' pants. Under the terms of this agreement, Polo sent fabric to Drusco in Florida, which Drusco then cut and pre-assembled before shipping the fabric pieces to the Dominican Republic to be sewed into finished pants. Drusco entered into similar arrangements with several other clothing manufacturers and combined the pants from all of the manufacturers into two large sealed containers that it delivered to Tropical. Drusco also arranged for the return shipment of the finished

---

[1] For clarity, this opinion refers only to Polo.

[2] This contract was never made part of the record.

trousers to Florida where it would add designer accoutrements before returning them to the manufacturers for sale to retailers.

While en route from the Dominican Republic to Florida, the container containing Polo's cargo was lost overboard in rough seas. General Accident paid Polo $197,907.80 for its loss. Polo, in a three count complaint against Tropical filed in the Southern District of Florida, asserted claims for breach of contract, bailment, and negligence. In a motion for partial summary judgment, Tropical sought judgment on the contract claim or, in the alternative, to limit the extent of damages recoverable by Polo to the value of the fabric shipped to Drusco. The district court granted the motion as to the contract claim on the ground that Polo did not have standing because it was not named in the bills of lading. The court also granted summary judgment to Tropical on the bailment and negligence claims as preempted by COGSA.[3] Polo timely appealed, challenging both the district court's conclusion that COGSA provides an exclusive remedy and that Polo is barred from seeking redress under COGSA.

## II. DISCUSSION

A. COGSA – An Exclusive Remedy

---

[3] The contract claim was not originally styled as a COGSA claim in the complaint, although COGSA was asserted as one basis for the court's jurisdiction, but the court and the parties treated the claim as such. The preemption argument did not appear in the briefs; the parties presumably raised it during oral argument.

3

COGSA, enacted in 1936, governs "all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." 46 U.S.C. § 1312 (1999). "The purpose of COGSA was to achieve international uniformity and to redress the edge in bargaining power enjoyed by carriers over shipper and cargo interests by setting out certain duties and responsibilities of carriers that cannot be avoided even by express contractual provision." Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 8-15, at 537 (2d ed. 1994). Although the act is not explicit, courts have agreed that a plaintiff states a *prima facie* claim under COGSA by demonstrating delivery of goods in sound condition to a carrier and their subsequent receipt in damaged condition. The burden then shifts to the carrier to establish that the damage was not caused by its negligence. See id. § 8-22, at 556.

The first question before us is whether this COGSA cause of action excludes all other remedies. Citing St. Paul's Fire & Marine Ins. Co. v. Marine Transp. Servs. Sea-Barge Group, Inc., 727 F. Supp. 1438, 1442 (S.D. Fla. 1989), the district court held that COGSA provided an exclusive remedy and therefore preempted Polo's tort claims. On appeal, Polo challenges the district court's reliance on St. Paul Fire & Marine and offers contrary appellate authority for the proposition that COGSA does not preclude tort law claims.

4

We conclude that because COGSA applies in this case, it provides Polo's exclusive remedy.[4] COGSA was intended to govern all contracts for carriage of goods between the United States and foreign ports. See 46 U.S.C. § 1312 (1999). Although the statute is silent on its preemptive scope, it states that it does not supersede any laws "insofar as they relate to the duties, responsibilities, and liabilities of the ship or carrier prior to the time when the goods are loaded on or after the time they are discharged from the ship." Id. § 1311. Because COGSA governs during the time after cargo is loaded and before it is removed from the ship, the implication from this provision is that COGSA, when it applies, supersedes other laws. The few courts addressing this issue have reached the same conclusion. See Sail America Found. v. M/V T.S. Prosperity, 778 F. Supp. 1282, 1285 (S.D.N.Y. 1991); St. Paul Fire & Marine, 727 F. Supp. at 1442; B.F. McKernin & Co. v. United States Lines, Inc., 416 F. Supp. 1068, 1071 (S.D.N.Y. 1976).

We have found no cases in which a court has allowed a tort claim to proceed when COGSA applies. A few courts have permitted cargo owners or shippers to bring bailment claims against vessel owners, but only after a determination that COGSA liability did not lie. See Tuscaloosa Steel Corp. v. M/V "Naimo", 1993

---

[4] Polo does not dispute that COGSA governs this controversy. See Appellants' Br. at 18.

5

A.M.C. 622, 626-27 (S.D.N.Y. 1992) (equity permitted a cargo owner to bring a tort claim against a negligent vessel owner who was not a "carrier" within the meaning of COGSA); DB-Trade Int'l, Inc. v. Astramar, 1988 A.M.C. 766, 767 (N.D. Ill. 1987) (same); cf. Nichimen Co. v. M/V Farland, 462 F.2d 319, 325-26 & n.1 (2d Cir. 1972) (had COGSA not applied to plaintiff's claim, the defendant carrier would have had to meet a different standard defending against a federal bailment claim).

Even though Polo concedes that COGSA applies, it maintains the viability of its tort claims as brought under COGSA. In Polo's view, because COGSA incorporated elements of tort law, it may bring a tort claim even if a contract claim under COGSA would fail. We disagree. That COGSA claims are hybrids born of elements from contract and tort does not change the fact that the resulting claim is a unitary statutory remedy, rather than an array of common law claims.[5]

Many courts have recognized that a COGSA claim against a negligent carrier for lost or damaged goods comprises elements of both contract, arising from the breach of the contract of carriage, and tort, issuing from the breach of the carrier's duty of care. See Associated Metals & Minerals Corp. v. Alexander's

_____

[5] Polo's complaint therefore should have stated a single COGSA claim instead of three separate causes of action. At some point in the proceedings before the district court, the contract claim was treated as the COGSA claim, thus segregating the remaining tort claims even though it appears that Polo intended all three claims as COGSA claims.

Unity MV, 41 F.3d 1007, 1017 (5th Cir. 1995) (COGSA claim against negligent carriers for lost goods or damaged was a hybrid contract and tort claim and was thus a "preferred maritime lien"); Texport Oil Co. v. M/V Amolyntos, 11 F.3d 361, 367 (2d Cir. 1993), overruled on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137 (1995) (collateral source rule applies to COGSA claim because it is a mixture of contract and tort); All Alaskan Seafoods, Inc. v. M/V Sea Producer, 882 F.2d 425, 430 (9th Cir. 1989) (cargo claims under Ship Mortgage Act sounded in tort and thus were entitled to preferred lien status); Oriente Commercial, Inc. v. The American Flag Vessel, 529 F.2d 221, 223 (4th Cir. 1975) (COGSA claims against negligent carriers bore an element of tort and are thus "preferred maritime liens" against defaulted vessels).

Although recognizing the COGSA claim's hybrid nature, these cases do not stand for the proposition that COGSA provides various causes of action, both contract and tort, from which a plaintiff may choose in seeking redress from a negligent carrier. Nothing in the language of COGSA or the cases interpreting it leads us to believe otherwise. We therefore conclude that COGSA affords one cause of action for lost or damaged goods which, depending on the underlying circumstances, may sound louder in either contract or tort.

7

The parties here agree that COGSA applies to Polo's claim against Tropical. Because COGSA provides an exclusive remedy, the district court properly granted summary judgment on Polo's actions in bailment and negligence.[6]

B. Polo's Standing to Bring a COGSA Claim

In its motion for partial summary judgment, Tropical sought judgment on Polo's COGSA claim[7] on the ground that Polo was not named in the bills of lading. The district court rejected Polo's argument that it was a third-party beneficiary to the bills of lading and granted summary judgment. In its motion for reconsideration Polo raised the alternative argument that the terms and conditions in the bills of lading contained numerous references to the "owner of the goods" as distinct from both shippers and consignees, and that owners of the shipped goods were a readily identifiable class of persons intended to be benefitted by the terms of the bills of lading. Tropical maintains that Polo waived this argument by failing to raise it earlier.

---

[6] If Polo's argument, at its root, is merely that determination of a proper party in interest for a COGSA claim should not be limited to contract principles but should also make reference to tort claims, that argument is adequately addressed in this court's conclusion, *infra,* that the district court failed to consider fully Polo's ability to bring a COGSA claim as owner of the lost goods.

[7] As noted earlier, the court treated Polo's contract claim as a COGSA claim.

8

Polo sufficiently raised the third-party beneficiary argument before the district court. Polo's reliance on the bills of lading's references to the term "owner of the goods" to sustain Polo's breach of contract claim is not a new argument, but part and parcel of its original argument that it was an intended third-party beneficiary to the bills of lading. The argument therefore is properly before us.

Polo is not named in the bills of lading. Contracts bind only named parties unless both parties to the contract clearly express an intent to benefit a third party. See Blu-J, Inc. v. Kemper C.P.A. Group, 916 F.2d 637, 640 (11th Cir. 1990). This rule of strict construction applies with equal force in contracts of carriage. See Hale Container Line, Inc. v. Houston Sea Packing Co., 137 F.3d 1455, 1465 (11th Cir. 1998). The third party need not be mentioned by name as long as the contract refers to a "well defined class of readily identifiable persons" that it intends to benefit. Generali v. D'Amico, 766 F.2d 485, 490 (11th Cir. 1985) (internal quotations omitted). Polo argues that the inclusion of the "owner of the goods" in the bills of lading evinces a clear intent to benefit that class of persons.

The two bills of lading underlying this action list two different companies in the Dominican Republic as shipper/exporter, Drusco as both consignee and notifying party, and Tropical as carrier. The owner of the goods is not specified

9

anywhere on the forms. The front of the forms, however, contains the following clause:

> In accepting this ocean bill of lading the shipper, consignee and owner of the goods agree to be bound by all of its stipulations, exceptions, and conditions, whether written, printed, or stamped on the front or back thereof, any local customs or privileges to the contrary notwithstanding.[8]

The back of the bills of lading uses the phrase "shipper, consignee or owner of the goods" repeatedly in defining the conditions of the contract of carriage. The final clause of the bills iterates that the "Shippers, Consignees and Owners of the goods and the Holder of the Bill of Lading expressly agree to all its terms."[9] Polo argues that these recurring references to the "owner of the goods" intend to benefit Polo.

Our research found one case presenting strikingly similar facts, the reasoning of which we find persuasive. In All Pacific Trading, Inc. v. Vessel M/V Hanjin Yosu, 7 F.3d 1427 (9th Cir. 1993), the court considered a consolidated action brought by nine owners of damaged goods and their insurers. Eight of the nine plaintiffs delivered their goods to different non-vessel-operating common carriers ("NVOCCs") who issued bills of lading to the shippers and then delivered the goods to the carrier, who in turn executed separate bills of lading with the

---

[8] Compl., Ex. A, in R., Tab 1.

[9] Pl's Mot. for Recons., Ex. A, in R., Tab 41.

10

NVOCCs.  See id. at 1429-30.  The cargo owners were not named in the bills of lading with the carrier.  See id. at 1430. The court rejected the carrier's argument that the plaintiff cargo owners lacked standing to sue because it found that the cargo owners were actual parties to the bills of lading under their definition of "Merchant."  See id. at 1431-32.  As with the bills of lading before us, those bills of lading contained a clause obligating the "owner of the goods" to their terms. See id. at 1432.

Polo's parallel contention is that well-established principles of maritime law grant an owner of lost or damaged cargo standing to sue for damages based on its proprietary interest in the goods, even if the owner is not explicitly named in the bill of lading.[10]  See, e.g., Schoenbaum, *supra*, § 8-10.[11]  Relying on the repeated references to the unnamed "owner of goods" in the bills of lading, Polo maintains

---

[10] This argument was raised in Polo's response to Tropical's motion for partial summary judgment.  See Pl.'s Resp. & Mem. of Law in Opp'n to Def.'s Mot. for Partial Summ. J. at 3, in R., Tab 29.

[11] Tropical voices concern over the possibility of double recovery in the suits brought by Drusco and Polo.  Polo acknowledges its obligation to Drusco, however, and any remaining apprehensions "are matters for practical determination."  Compagnie de Navigation Fraissinet & Cyprien Faire, S.A. v. Mondial United Corp., 316 F.2d 163, 172 & n.14 (5th Cir. 1963).  For example, on remand, Polo could agree to consolidate its claim with Drusco's or reduce its request for damages by the amount sought by Drusco in its complaint.  The record demonstrates that Drusco and Polo are amenable to making such arrangements.  See Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Recons., Ex. A, in R. Tab 45 (letter from Drusco's counsel to Polo's counsel); Notice of Pendency of Other Actions and Mot. to Consolidate, in R., Tab 10 (filed by Polo).

11

that it is a proper party in interest to seek recovery from Tropical for the lost cargo.[12]

Under either theory of recovery, Tropical contends that summary judgment was appropriate because Polo never presented sufficient evidence of its ownership of the lost goods. The record generated by this case is regrettably sparse, but our review of its limited contents finds evidence of Polo's ownership of the goods sufficient to withstand summary judgment. Polo submitted an affidavit of Karen Jeannetti-Pascucci, Senior Director of Treasury and Risk Operations at Polo,[13] which attested that "POLO RALPH LAUREN owned 100% of the subject cargo, which consisted of 4,643 pairs of finished pants, at the time of the loss."[14] Polo

_____

[12] Admiralty cases, like any other, must be brought by a real party in interest. See Fed. R. Civ. P. 17(a); Farbwerke Hoeschst A.G. v. M/V "Don Nicky", 589 F.2d 795, 797 (5th Cir. 1979) ("The Federal Rules of Civil Procedure are fully applicable in admiralty cases."). Depending on the circumstances of the underlying transaction, a proper admiralty plaintiff might be the shipper or consignee named in the bill of lading, or the owner of the goods, with consideration given to which party had a proprietary or financial stake in the lost or damaged goods, and which party bore the risk of loss. For example, when a shipper sells goods to a buyer, determination of whether the seller or buyer is the real party in interest turns on whether title to the goods passed from the former to the latter at the point of shipment or of receipt of the goods. See Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* § 3-6 at 100-08 (2d ed. 1975). This case presents somewhat unusual circumstances in that the goods were being sent and received by the same party.

[13] Tropical questions the affidavit because Polo filed a correction after learning that the affidavit misstated that Polo had already paid Drusco for its services. This error, however, does not undermine the accuracy of the remainder of the affidavit.

[14] Pl.'s Resp. & Mem. of Law in Opp'n Def's Motion for Partial Summ. J., Ex. 1 ¶ 2, in R., Tab 29.

also presented deposition testimony of Daniel H. Moss, Executive Vice-President of Drusco, who stated that, "The cargo was dropped overboard. It was Polo's fabric. I owe Polo for the fabric."[15] Mr. Moss further testified that, under Drusco's contract with Polo, "Polo ships me their fabric. . . . I cut it. I ship it to the Dominican Republic. . . . I buy what is known as trimmings or sundries and add that to it. I add the value of the labor to stitch it together. I ship it back."[16] The bills of lading, with their numerous references to "owner of the goods," were also before the district court.

The bills of lading between Tropical and Drusco recurrently refers to the "owner of the goods" and specifically binds the "owner of the goods" to its terms and obligations, creating the possibility that Polo would have standing to sue as owner of the goods or as a third-party beneficiary to the bills of lading. Although this court does not express an opinion on whether Polo ultimately will be able to prove ownership of the lost trousers, there was sufficient evidence before the district court of Polo's ownership to render improvident its grant of summary judgment on Polo's COGSA claim.

C. Polo's Agency Argument

---

[15] Pl.'s Mot. for Partial Summ. J. as to Damages, Ex. 1 at 8, in R., Tab 36.

[16] Id. at 8-9, in R., Tab 36.

13

Polo contends in the alternative that it has standing to sue under the bills of lading as an undisclosed principal to Drusco, who acted as its agent in signing the bills of lading. See New Jersey Steam Navigation Co. v. Merchants' Bank, 47 U.S. (6 How.) 343, 380-81 (1848). Tropical and Polo dispute whether this agency argument was presented sufficiently to the district court or whether it is being raised for the first time on this appeal. This court's review of the record comports with the latter view. In its complaint and response to Tropical's motion for partial summary judgment, Polo asserted its rights only as owner of the goods and as third-party beneficiary to the bill of lading, but never raised an agency argument.[17]

This court may consider an issue not brought before the district court in the following narrow exceptions:

> First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice. Second, the rule may be relaxed where the appellant raises an objection to an order which he had no chance to raise at the district court level. Third, the rule does not bar consideration by the appellate court in the first instance where the interest of substantial justice is at stake. Fourth, a federal appellate court in justified in resolving an issue not passed on below . . . where the proper resolution is beyond doubt. Finally, it may be appropriate to

---

[17] Even if Polo had raised it, there is no evidence in the record to support Polo's contention that Drusco acted as its agent. Although Polo cites portions of its bailment agreement with Drusco, that agreement was never made part of the record. In addition, the testimony of Drusco's Vice-President regarding its relationship with Polo could be characterized equally well as that of agent or independent contractor.

14

consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

Narey v. Dean, 32 F.3d 1521, 1526-27 (11th Cir. 1994) (quoting Dean Witter

Reynolds, Inc. v. Fernandez, 741 F.2d 355, 360-61 (11th Cir. 1984)).

Polo propounds four of these five bases as justification for considering its agency argument, none of which are availing. First, determination of the existence of an agency relationship is a factual question. Second, we do not find that the interest of substantial justice is at stake here when Polo forsook its opportunity to present its agency argument to the district court. Third, the resolution of this issue, in light of the scanty record, is hardly beyond doubt. Finally, although this court appreciates Polo's view that matters of great moment are implicated by this appeal, we cannot agree that resolution of Polo's relationship with Drusco in this instance warrants exception to the general rule that matters must be presented before the district court in the first instance. We therefore decline to consider Polo's agency argument.

D. Damages

If Polo is allowed to maintain any cause of action against Tropical, Tropical contends that its damages should be limited to $35,155.25, the value of the fabric that Polo delivered to Drusco. Polo counters that well-established maritime law

15

sets the value of lost goods as the fair market value of the goods upon their arrival, and that the value of the then-finished pants totaled $179,916.25.[18]  Resolution of this issue is best left to the district court in the first instance if it finds that Polo is entitled to damages.

## III.  CONCLUSION

Based on the foregoing reasons, we AFFIRM the district court's grant of summary judgment on Polo's bailment and negligence claims and REVERSE the district court's grant of summary judgment to Tropical on Polo's COGSA claim and REMAND for further proceedings consistent with this opinion.

**AFFIRMED in part; REVERSED and REMANDED in part.**

---

[18] Polo acknowledges that $27,977.75 of that amount would be set aside for Drusco for the value of its services performed.  See Appellants' Reply Br. at 10.  Under the terms of its insurance policy, General Accident paid Polo the market value of the lost goods plus 10%, for a total payment of $197,907.80.