426 F.3d 580
 RATIONIS ENTERPRISES INC. OF PANAMA, Mediterranean Shipping Co., S.A. of Geneva, Counter-Defendant-Appellee,
North of England Protecting and Indemnity Association, Consolidated-Plaintiff-Appellee,
v.
HYUNDAI MIPO DOCKYARD CO., Ltd., Third-Party-Defendant-Appellant,
Hyundai Corporation, Consolidated-Plaintiff-Appellant.
Docket No. 04-4267-CV.
 Docket No. 04-5572-CV(L).
 Docket No. 04-6028-CV(CON).
 United States Court of Appeals, Second Circuit.
 Argued: January 4, 2005.
 Decided: October 17, 2005.
 
 1
 COPYRIGHT MATERIAL OMITTED Raymond J. Burke, Jr., Christopher H. Dillon, Burke & Parsons, NY, NY; Gregory S. Coleman, Christopher S. Johns, Weil, Gotshal & Manges LLP, Austin, Texas for Defendants-Appellants Hyundai Mipo Dockyard and Hyundai Corporation.
 
 
 2
 Machale A. Miller, Miller & Williamson LLC, New Orleans, Louisiana; Vincent M. DeOrchis, John A. Orzel, Pamela A. Palmer, DeOrchis & Partners, LLP, NY, NY; John Eric Olson, Raymond P. Hayden, Hill Rivkins & Hayden LLP, NY, NY; John T. Lillis, Thomas Murphy, Kennedy, Lillis, Schmidt & English, NY, NY; Roman Badiak, Badiak Will & Ruddy, NY, NY; Stephen H. Vengrow, Patrick Michael DeCharles, III, Cichanowicz, Callan, Keane, Vengrow & Textor, NY, NY; Edward C. Radzik, Robert J. Phillips, Jr., William R. Conner, III, Donovan Parry McDermott & Radzik, NY, NY; Richard W. Stone, II, Francis M. O'Regan, Waesche, Sheinbaum & O'Regan, NY, NY; Christopher Raleigh, Cozen & O'Connor, NY, NY; James M. Kenny, Kenny, Stearns & Zonghetti, NY, N.Y. for Counter-Defendants-Appellees Rationis Enterprises Inc. of Panama, Mediterranean Shipping Co., S.A. of Geneva.
 
 
 3
 Before: WINTER, SOTOMAYOR, and B.D. PARKER Circuit Judges.
 
 
 4
 B.D. PARKER, JR. Circuit Judge.
 
 
 5
 Hyundai Corporation and Hyundai Mipo Dockyard appeal a judgment, entered following a trial to the United States District Court for the Southern District of New York (Owen, J.) arising from the loss of the containership MSC Carla. They advance a number of contentions, but we do not reach most of them since we conclude that one — that Korean law applies and precludes liability — is dispositive.[1]
 
 BACKGROUND
 I. The Lengthening
 
 6
 The evidence at trial established that the containership MSC Carla (originally called the Nihon) was built in 1972 in Sweden. A Swedish firm, Brostrom Shipping Co. Ltd. ("Brostrom"), initially managed the ship, sailing it under the Swedish flag. Brostrom used the classification society Lloyd's Register ("Lloyd's") (an international risk management organization providing underwriters and merchants with information on the condition of vessels) to develop specifications to lengthen the vessel by adding a fifteen-meter midsection to provide an extra cargo hold. After receiving bids from several shipyards, Brostrom contracted with Hyundai Mipo Dockyard in Korea (collectively with Hyundai Corporation, "Hyundai") to do the work. Brostrom and Hyundai agreed English law would govern the work.
 
 
 7
 Hyundai manufactured the midsection to Lloyd's specifications prior to the Nihon's arrival in Korea in September 1984. Just as a midsection is welded into a bisected car to construct a limousine, the Nihon was elongated. Lloyd's inspectors observed the process. The welded joints attaching the inserted midsection were visually inspected, as well as subjected to extensive radiographic tests.
 
 
 8
 In May 1985, seven months after the ship resumed sailing, Lloyd's discovered a fatigue crack and conducted ultrasonic testing of the welds. The ship returned to Korea. Hyundai furnished Lloyd's with a report of certain defects in the welds and offered to repair them. Lloyd's determined the repairs were unnecessary, but marked the Nihon's record with a "condition of class" to ensure that the welds would continue to be monitored. After subsequent surveys finding no defect, Lloyd's reduced the condition of class. After 1985, Hyundai had no further involvement with the vessel.
 
 II. MSC's Purchase
 
 9
 The ship was sold four times before being purchased in 1995 by a Panamanian company, Mediterranean Shipping Co., S.A. ("MSC"), and subsequently was renamed the MSC Carla. MSC purchased the Nihon in 1995 "as is." Prior to the purchase, a Lloyd's inspector imposed three conditions of class due to cracks in the starboard tank and corrosion in the starboard and port tanks. A Lloyd's work list called for new steel in several areas. In 1995, and then again in 1996, MSC requested postponements of the repairs and Lloyd's agreed. It is unclear whether the repairs were performed. Nevertheless, in 1997, during a twenty-five year inspection of the ship, the conditions of class were removed.
 
 III. The Casualty Voyage
 
 10
 The MSC Carla departed France for the United States in November 1997. The containership was filled with cargo and there is conflicting evidence as to whether it was loaded properly. There were several storms in the North Atlantic, and it is also debated by the parties whether the MSC Carla might have been able to avoid them entirely. This sort of weather is usual for the season and containerships similar to the MSC Carla normally handle this weather without incident.
 
 
 11
 During the voyage, water began splashing over the deck, possibly seeping into the boat's front hatches. All three engines cut. One restarted. As the boat climbed a large wave, the captain testified that the ship "hogged," with the front and aft sections sagging below the middle. The captain heard a breaking noise carry through the length of the hull and he noticed the bow light abnormally low.
 
 
 12
 The ship broke along the weld lines. The crew was soon airlifted to safety. Six days later the buoyant, dry aft section was towed to Las Palmas, Canary Islands, where it was inspected and its cargo salvaged. The flooded front section sank.
 
 IV. Procedural History
 
 13
 Rationis and MSC, the ship's owner and operator, respectively, filed a limitation of liability proceeding in the Southern District of New York. The almost one thousand receivers of lost cargo (collectively, the "cargo interests") brought third-party complaints against Hyundai based on the allegedly defective lengthening work. Rationis and MSC's liability insurer, North of England Protecting and Indemnity Association ("NOE"), settled with the cargo interests in 2000 for $16.95 million. (NOE also settled with various cargo interests separately.) NOE joined the action against Hyundai, to recover the amounts paid in the settlement.
 
 
 14
 In the pre-trial proceedings before the District Court, Hyundai argued, among other things, that the District Court lacked personal jurisdiction. Hyundai then commenced, in a Korean court, two declaratory judgments to establish non-liability. (The first action named and served three cargo interests and the second action named, but never served, most of the other nearly one thousand cargo interests). The District Court then issued an anti-suit injunction, requiring Hyundai to request a suspension of the Korean action. Hyundai requested the suspension, but appealed the injunction, arguing again that the District Court lacked personal jurisdiction.
 
 
 15
 We vacated and remanded the anti-suit injunction, directing the District Court to conduct an evidentiary hearing as to whether the Court had personal jurisdiction over Hyundai. Rationis v. AEP/Borden Indus., 261 F.3d 264 (2d Cir.2001). We also directed the District Court, should it issue an anti-suit injunction, to heed China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33 (2d Cir.1987) and its progeny since it had failed to conduct such an analysis before initially enjoining Hyundai.
 
 
 16
 On remand, the District Court conducted an evidentiary hearing on personal jurisdiction and concluded that it had jurisdiction. Hyundai subsequently moved for summary judgment, arguing, in part, that the plaintiffs could not prevail under the laws of either Korea, Sweden or Panama, the universe of jurisdictions whose laws potentially applied. The Court denied the motion, concluding that Hyundai had waived its choice of law defense by failing to select a particular foreign law until the summary judgment stage. The Court stressed that, although Hyundai had announced as early as their answer to the complaint that the "substantive law of a foreign country governs," they had delayed through four years of litigation, until after the completion of discovery, before precisely identifying the applicable foreign law. In Re Rationis Enters., Inc. of Panama, 2003 WL 203210, *1 (S.D.N.Y.2003). The District Court reasoned that this alternative pleading style failed to provide the opposing party with the notice required by Fed. R. of Civ. Proc. 44.1.[2] The Court concluded that Hyundai's overly expansive formulation of foreign law prejudiced the plaintiffs. Finding waiver, the Court saw no need to conduct a choice of law analysis and proceeded to apply United States law.
 
 
 17
 The District Court held a bifurcated bench trial. There Hyundai continued to maintain that it did not waive the choice of law argument and United States law did not apply. The major factual disputes centered on whether the deck broke first as a result of the allegedly faulty welding, or whether the allegedly corroded bottom collapsed first, as a result of MSC's failure to maintain the ship. The parties also disagreed as to whether the lengthening contract was for the sale of goods or the provision of services, only the first of which implicates products liability doctrines. Hyundai, as a nominal party to the contract, contended that the District Court lacked personal jurisdiction and that NOE's claims were barred under a contribution of settling parties theories. Following trial, the District Court found Hyundai liable in negligence and strict liability. Hyundai appeals, raising a host of issues. We reach only one — the choice of foreign law — because we conclude it is dispositive. We reverse.
 
 DISCUSSION
 I. Standard of Review
 
 18
 The parties dispute the standard of review applicable to the District Court's choice of foreign law ruling. Hyundai takes the position that all choice of law determinations, including the one presently before us, are questions of law to be reviewed de novo. NOE and the cargo interests maintain that, because the district court did not undertake a choice of law analysis, we should review for abuse of discretion the district court's determination that the defense was waived.
 
 
 19
 The District Court's determination regarding what constitutes "reasonable ... notice" under Rule 44.1 and waiver of the foreign law issue falls within the discretionary powers of the District Court to supervise litigation. Therefore, we agree with NOE and the cargo interests that those threshold determinations should be reviewed for abuse of discretion. See Pierce v. Underwood, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (explaining that matters of discretion should be reviewed for "abuse of discretion"). As the Ninth Circuit has explained, "[b]ecause Rule 44.1 grants the district court discretion in determining `reasonable' notice, we review the district court's application of this standard for abuse of discretion." DP Aviation v. Smiths Indus. Aerospace & Defense Sys., Ltd., 268 F.3d 829, 846 (9th Cir.2001). However, once we move beyond the issue of "reasonable notice," we will review any determinations concerning the appropriate choice of law de novo. Curley v. AMR Corp., 153 F.3d 5, 11 (2d Cir.1998).
 
 II. Pleading Alternative Bodies of Law
 
 20
 Before we conduct the choice of law analysis, we must resolve whether Hyundai waived the foreign law argument by simultaneously pleading the applicability of English, Swedish, Korean, or Panamanian law, and not settling conclusively on one body of foreign law. We must determine whether the District Court's determination that Hyundai waived this argument was proper. We now clarify that alternative theories may well suffice as reasonable notice when, as here, relevant events occurred in multiple foreign locations and legitimately point to several different applicable bodies of law. We therefore find that the parties gave proper Rule 44.1 notice and the applicability of foreign law was not waived. We hold that the District Court's decision that notice was not proper and that therefore Hyundai waived the foreign choice of law argument exceeded its discretion.
 
 
 21
 Congress passed Rule 44.1 in 1966 to avoid unfair surprise, to make uniform the permissibility of raising an issue of foreign law after pleadings where the choice of law issue became apparent later, and to put to rest the notion that foreign law is a question of fact that must be proved at trial and reviewed on appeal only for clear error. While the Rule requires that the parties give notice of the intent to raise foreign law, the Advisory Committee's Notes make clear that Congress deliberately declined to provide "any definite limit on the party's time for giving the notice of an issue of foreign law." FED. R. CIV. P. 44.1 advisory committee's note, 39 F.R.D. 69, 118 (1966). Congress explained: "The stage which the case has reached at the time of the notice, the reason proffered by the party for his failure to give earlier notice, and the importance to the case as a whole of the issue of foreign law sought to be raised, are among the factors which the court should consider in deciding a question of the reasonableness of a notice." Id.
 
 
 22
 It is important to acknowledge that notice under Rule 44.1 differs from argument — notice merely called attention to the fact that the issue will be raised, whereas argument lays out, inter alia, the provisions of foreign law, the basis for its relevance, and the application of the foreign law to the facts of the case. Indeed, the Advisory Committee distinguished between notice and "presentation of material on the foreign law." Id. According to a prominent treatise, "[t]he function of the notice is not to spell out the precise contents of foreign law but rather to inform the court and litigants that it is relevant to the lawsuit. Thus a high degree of specificity is not required." CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2443, (2d ed.1994). Accordingly, a litigant must provide the opposing party with reasonable notice that an argument will be raised, but the litigant need not flesh out its full argument at the Rule 44.1 stage. In a maritime mass tort such as the case before us, the choice of law analysis is complex, as well as highly dependent on facts that may not be adduced until discovery has proceeded. Indeed, in international disputes involving parties of sundry allegiances, the eight-factor choice of law analysis discussed below is rarely well-managed by bright-line rules, uniform deadlines, or aggressive findings of waiver. Frequently, the proper determination of foreign law can be a complicated task. Rule 44.1 is intended to assist the court with its work and the court is, of course, free to enlist the parties in this effort. Ultimately, the responsibility for correctly identifying and applying foreign law rests with the court.
 
 
 23
 The question here is not whether Hyundai failed to give any notice, but rather, whether its alternative pleading offended Rule 44.1. Although this may force the opposing party to conduct further research, such additional work in a maritime mass tort is hardly the undue surprise Rule 44.1 seeks to prevent. Perhaps it is even to be expected, when shipping goods from Europe to the United States, on a Swedish ship, modified in Korea, currently owned and operated by Panamanians. We therefore recognize alternative pleading of choice of law issues as satisfying the notice requirements of Rule 44.1. For these reasons, we find Hyundai's alternative notice reasonable under Rule 44.1 and that it is an abuse of the District Court's discretion to have held otherwise.
 
 III. Choice of Law Analysis
 
 24
 Lauritzen v. Larsen, 345 U.S. 571, 583-92, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), directs us to consider seven factors in conducting a choice of law interest analysis. Adding another factor, the Supreme Court announced in Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 309, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), that the Lauritzen factors are "not intended as exhaustive." We enumerated the Lauritzen factors in Carbotrade S.P.A. v. Bureau Veritas, 99 F.3d 86, 90 (2d Cir.1996): "(1) the place of the wrongful act; (2) the law of the ship's flag; (3) the domicile of the injured party; (4) the domicile of the shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations."
 
 
 25
 The law of the ship's flag at the time of the welding was Sweden, but at the time of the casualty was Panama. Generally, we look to the law of the ship's flag only if the shipowner is a party:
 
 
 26
 Whatever significance law of the flag may have in cases where the ship or its owner is a party and where other factors fail to point clearly to another jurisdiction's law, we see no reason to apply the law of the flag here in preference to that of another jurisdiction whose ties are more pertinent to the dispute, especially given the fact that neither the ship nor the owner is a party.
 
 
 27
 Carbotrade, 99 F.3d at 92-93. Here, Brostrom, the shipowner at the time of the welding, is not a party and Rationis, the shipowner at the time of the casualty, is also not a party, having settled without asserting claims against Hyundai. We therefore do not consider the law of the flag a determinative factor. For the same reasons, the shipowner's base of operations is not a determinative factor here. Another non-determinative factor is the place of the contract as this case arises in tort, not contract.[3] See Carbotrade, 99 F.3d at 91 ("[N]o direct contractual relationship exists between the plaintiff and the defendant, so the fifth factor — the place of the contract — is not involved in our analysis."). Inaccessibility of a foreign forum also is not relevant, because a New York court is fully capable of applying foreign law in this case. See Lauritzen, 345 U.S. at 590, 73 S.Ct. 921 ("There is not the slightest showing that to obtain any relief to which [they are] entitled under [foreign] law would require [their] presence in [a foreign forum] or necessitate [their] leaving New York."). Finally, this Court has considered the law of the forum generally of little relevance in United States courts. Carbotrade, 99 F.3d at 91 ("[T]he seventh Lauritzen factor — the law of the forum — is irrelevant here because this litigation is in the courts of the United States.").
 
 
 28
 The place of the alleged wrongful act that gave rise to the liability is Korea, where the welding was performed. The cargo interests contend that the place of the wrongful act is the location of the casualty, that is, the Atlantic Ocean. But we have held that the place of the wrongful act is not where the vessel sinks, but where the negligence occurs. See Carbotrade, 99 F.3d at 91. The reason for this rule is not difficult to discern because it is the state where the negligence occurs that has the greatest interest in regulating the behavior of the parties. See Curley, 153 F.3d at 15 (focusing on the location of the tort and choosing Mexican law, because Mexico has the greatest interest in regulating the behavior of the parties).
 
 
 29
 The citizenship of the injured parties factor is complicated by incomplete discovery. A good portion of the cargo interests are United States citizens and a good portion are European, but the precise breakdown is disputed. It is clear that the citizenship of NOE, the insurer with the greatest share of the claims and also the insurer for the shipowner and ship operator, is the United Kingdom. Furthermore, the destination of the lost cargo does not dictate the governing body of law; according to Lauritzen, a nation has a compelling interest in protecting its nationals, not its imports. Lauritzen, 345 U.S. at 586, 73 S.Ct. 921. It is simply too variable and indeterminate to ground the choice of law analysis in the intended destination of the lost cargo. Even from the sparse record as to the cargo interests' countries of citizenship, this factor steers toward "much of the globe." Carbotrade, 99 F.3d at 90 (internal citation omitted).
 
 
 30
 The citizenship of the defendants, Hyundai, is Korea. The presence of Hyundai Mipo Dockyard's counsel and the affairs Hyundai Corporation conducts with United States businesses, while critical to a personal jurisdiction analysis, does not help determine the applicable body of law because those affairs are wholly unconnected to the events giving rise to the casualty. "The presence of an office of a defendant in a particular country might not always be sufficient to tip this factor in favor of applying the law of that country." Carbotrade, 99 F.3d at 91-92 (giving weight to the location of the defendant's office only because that office gave rise to the dispute). The citizenship of the defendants points without question to Korean law.
 
 
 31
 Taking these factors together, we find Korean law applies. The allegiance of the injured parties does not point conclusively to United States law, because a significant portion of the injured parties are European. Even if we were to consider the allegiance of some of the cargo interests as favoring United States law to some degree, this is balanced by the allegiance of the defendants, which strongly favors Korean law. Ultimately, it is the place of the alleged wrongful act that tips the scale in favor of Korean law, for Korea, with its extensive shipbuilding business, possesses the greatest interest and responsibility in regulating the industry. See Curley, 153 F.3d at 15. Because Korean law bars the cargo interests and NOE from recovery against Hyundai due to statutes of repose, we reverse the District Court's finding of liability.[4]
 
 CONCLUSION
 
 32
 For the foregoing reasons, we reverse the judgment of the District Court, vacate the anti-litigation injunction as moot and remand with instructions to enter judgment in favor of Appellants.
 
 
 
 Notes:
 
 
 [1]
 Hyundai Corporation and Hyundai Mipo Dockyard also appeal an anti-suit injunction prohibiting their participation in parallel litigation in Korea. Because we conclude they are not liable under the applicable Korean law, we vacate the anti-suit injunction as moot
 
 
 [2]
 Fed. R. of Civ. Proc. 44.1 provides: "A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rule of Evidence. The court's determination shall be treated as a ruling on a question of law."
 
 
 [3]
 The District Court explained, after finding liability on the basis of strict liability and negligence theories, that "these claims arise not in tort but in contract on the basis of bills of lading issued to the cargo interests."In re: Rationis Enters., Inc. of Panama, 325 F.Supp.2d 318, 328-29 (S.D.N.Y.2004). The Court stated this as an explanation for the inapplicability of the Settlor Bar Rule. This is error because products liability sounds in tort. Cf. International Ore & Fertilizer Corp. v. SGS Control, 38 F.3d 1279, 1284 (2d Cir.1994); see also East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (distinguishing between strict liability claims in tort and warranty claims in contract).
 Appellees also argue that the claims were brought in contract under the Carriage of Goods by Sea Act ("COGSA"), 46 App. U.S.C.A. § 1304. This is not the case under Second Circuit law. Indeed, we have explicitly held that a COGSA claim may be a "mixed tort, contract and bailment cause of action." Texport Oil Co., v. M/V Amolyntos, 11 F.3d 361, 367 (2d Cir.1993) (citation and internal quotation marks omitted), overruled on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). The Fourth, Fifth, Ninth, and Eleventh Circuits have similarly held. See Oriente Commercial, Inc. v. American Flag Vessel, 529 F.2d 221, 223 (4th Cir.1975); Associated Metals & Minerals Corp. v. Alexander's Unity MV, 41 F.3d 1007, 1013-14 (5th Cir.1995); All Alaskan Seafoods, Inc. v. M/V Sea Producer, 882 F.2d 425, 430 (9th Cir.1989) (holding that "[i]f [a contracting party] breached its duty of care with respect to [another party to the contract] then that breach of duty can give rise to tort liability irrespective of contract obligations between the parties."); Polo Ralph Lauren, L.P. v. Tropical Shipping & Construction Co., 215 F.3d 1217 (11th Cir.2000). As the Eleventh Circuit further explained, "COGSA affords one cause of action for lost or damaged goods which, depending on the underlying circumstances, may sound louder in either contract or tort." Polo Ralph Lauren, 215 F.3d at 1221.
 
 
 [4]
 "The right to claim for damages resulting from an unlawful act shall lapse by prescription ... if ten years have elapsed from the time when the unlawful act was committed." Korean Civil Act, No. 6591, Ch. V, Art. 766 (2002) (S.Korea). "The right for damages under [the Product Liability Act] shall be exercised within 10 years from the date on which a manufacturer supplies a product causing damage." Product Liability Act, No. 6109, Art. 7. (2000) (S.Korea)